KATHY J. HUANG (SBN 240677)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
E-mail:   kathy.huang@alston.com

JONATHAN D. PARENTE (*pro hac vice pending*)
JASON ROTTNER (*pro hac vice pending*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail:   jonathan.parente@alston.com
              jason.rottner@alston.com

*Attorneys for Defendants*
*Wata, Inc. and Collectors Universe, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| JACOB KNIGHT, JACK CRIBBS, and JASON DOHSE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WATA, INC., and COLLECTORS UNIVERSE, INC.,<br><br>Defendants. | Case No.: 8:22-cv-00967-DOC-KES<br><br>Assigned to the Hon. David O. Carter<br><br>**DEFENDANTS WATA, INC.'S AND COLLECTORS UNIVERSE, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**<br><br>[Filed concurrently with the Notice of Motion; Declaration of Kathy J. Huang; [Proposed] Order; and Motion to Transfer]<br><br>Date:          July 25, 2022<br>Time:          8:30 a.m.<br>Courtroom:   10A |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................1

II.   BACKGROUND ........................................................................2

III.  LEGAL STANDARD .................................................................4

IV.   ARGUMENT .............................................................................6

    A.   Plaintiffs' Claims Fall Within the Scope of the Mandatory Forum-Selection Clause .......................................................................7

    B.   The Forum-Selection Clause Is Valid and Enforceable.....................10

        1.   Plaintiffs cannot meet their heavy burden to show that the inclusion of the forum-selection clause was a product of fraud or overreach ..................................................................11

        2.   Plaintiffs cannot meet their heavy burden to show that they would effectively be deprived of their day in court if the forum-selection clause was enforced........................................13

        3.   Plaintiffs cannot meet their heavy burden to show that enforcement of the forum-selection clause would contravene a strong public policy of this forum ......................14

    C.   The § 1404(a) Public-Interest Factors Do Not Otherwise Militate Against Transfer..................................................................17

    D.   Transfer Is Appropriate as to Claims Against Both Defendants—Including Collectors Universe ........................................................21

        1.   Any alleged conduct of Wata's parent company, Collectors Universe, is so closely related to the contractual relationship that the forum-selection clause applies to both Defendants ..................................................................21

        2.   In any event, all parties have consented to transfer..................22

V.    CONCLUSION .........................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allegiance Healthcare Corp. v. London Int'l Grp.*,
  No. 97-cv-4619, 1998 U.S. Dist. LEXIS 8953 (N.D. Cal. June 16, 1998) ........ 18

*America Online, Inc. v. Superior Court*,
  90 Cal. App. 4th 1 (Cal. Ct. App. 2001) .......................................................... 15

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
  571 U.S. 49 (2013) ................................................................................. *passim*

*Brown v. Artec Glob. Media, Inc.*,
  No. 16-cv-2651, 2017 U.S. Dist. LEXIS 233746 (S.D. Cal. July 5, 2017) ....... 11

*Cal. Tow Truck Ass'n v. City & Cnty. of S.F.*,
  797 F.3d 733 (9th Cir. 2015) ............................................................................. 8

*Cooley v. Target Corp.*,
  No. 20-cv-00876-DOC, 2020 U.S. Dist. LEXIS 246876 (C.D. Cal. Oct. 12,
  2020) ................................................................................................................. 7

*Davis v. HSBC Bank Nev., N.A.*,
  557 F.3d 1026 (9th Cir. 2009) .......................................................................... 19

*Doe 1 v. AOL LLC*,
  552 F.3d 1077 (9th Cir. 2009) ..................................................... 14, 15, 16, 17

*E. Bay Women's Health, Inc. v. gloStream, Inc.*,
  No. 14-cv-00712, 2014 U.S. Dist. LEXIS 55846 (N.D. Cal. Apr. 21, 2014) .... 16

*Earthmade Prods., LLC v. Botanicals Internacional S.A. de C.V.*,
  No. 8:20-cv-02445, 2022 U.S. Dist. LEXIS 26437 (C.D. Cal. Feb. 1, 2022) ... 19

*Fireman's Fund Ins. Co. v. Plant Insulation Co.*,
  734 F.3d 900 (9th Cir. 2013) ............................................................................. 8

*Future Foam v. Fxi, Inc.*,
  No. 16-cv-312, 2016 U.S. Dist. LEXIS 204836 (C.D. Cal.
  Apr. 5, 2016) .............................................................................. 11, 19, 21

*Gamayo v. Match.com, LLC*,
  No. 11-cv-00762, 2011 U.S. Dist. LEXIS 95914 (N.D. Cal. Aug. 23, 2011) ... 15

*Huffington v. T.C. Grp., LLC*,
  637 F.3d 18 (1st Cir. 2011) ............................................................................... 8

*Hugel v. Corp. of Lloyd's*,
  999 F.2d 206 (7th Cir. 1993) ........................................................................... 21

*Indep. Fin. Grp., LLC v. Quest Tr. Co.*,
No. 3:21-cv-00537, 2021 U.S. Dist. LEXIS 116518 (N.D. Cal. June 22,
2021) ............................................................................................................... 10

*JPMorgan Chase Bank, N.A. v. Coverall No. Amer., Inc.*,
No. 1:08-cv-0805, 2009 U.S. Dist. LEXIS 47794 (N.D. Ohio June 1, 2009) ..... 7

*Lee v. Fisher*,
No. 21-15923, 2022 U.S. App. LEXIS 12941 (9th Cir. May 13, 2022) ............ 14

*Lentini v. Kelly Servs.*,
No. 17-cv-03911, 2017 U.S. Dist. LEXIS 162744 (N.D. Cal. Oct. 2, 2017) ..... 12

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) ................................................................ 8, 10, 21

*Miave v. Pitech Plus*,
No. 21-cv-00327, 2021 U.S. Dist. LEXIS 109444 (C.D. Cal. May 5, 2021) .... 19

*Montalvo Assocs., LLC v. Amtax Holdings 279, LLC*,
No. 5:21-cv-00797, 2021 U.S. Dist. LEXIS 140026 (N.D. Cal. July 27,
2021) ............................................................................................................... 18

*Moretti v. Hertz Corp.*,
No. 13-cv-02972, 2014 U.S. Dist. LEXIS 50660 (N.D. Cal. Apr. 11, 2014) .... 12

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2003) ......................................................................... 10

*Novak v. Tucows, Inc.*,
No. 06-cv-1909, 2007 U.S. Dist. LEXIS 21269 (E.D.N.Y. Mar. 26, 2007) ...... 21

*Or.-Idaho Utils., Inc. v. Skitter Cable TV, Inc.*,
No. 1:16-cv-00228, 2017 U.S. Dist. LEXIS 128287 (D. Idaho
Aug. 9, 2017) ............................................................................................... 9, 23

*Palinode, LLC v. Plaza Servs., LLC*,
No. 3:20-cv-00807, 2021 U.S. Dist. LEXIS 186044 (M.D. Tenn. Sept. 28,
2021) ............................................................................................................... 21

*Perez v. CRST Int'l*, No. 17-cv-1081, 2018 U.S. Dist. LEXIS 27901 (C.D. Cal.
Feb. 14, 2018) ................................................................................................. 17

*Petersen v. Boeing Co.*,
715 F.3d 276 (9th Cir.) ..................................................................................... 11

*Plumleigh v. Metro. Fine Arts & Antiques*,
No. 14-cv-1721, 2015 U.S. Dist. LEXIS 201118 (C.D. Cal. Jan. 21, 2015) ..... 16

*Quality Office Furnishing v. Allsteel, Inc.*,
No. 17-cv-0724-DOC, 2017 U.S. Dist. LEXIS 236497 (C.D. Cal. June 23,
2017) .................................................................................................. 6, 13, 14, 20

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) ......................................................................... 11

*Run Them Sweet, LLC v. CPA Glob., Ltd.*,
   No. 16-cv-03662, 2016 U.S. Dist. LEXIS 147803 (N.D. Cal. Oct. 25, 2016)...15

*S Squared Sustainable Surfaces, LLC v. Upofloor Ams., Inc.*,
   No. 16-cv-3354, 2016 U.S. Dist. LEXIS 185795 (C.D. Cal. Aug. 1, 2016)........6

*Sawyer v. Bill Me Later, Inc.*,
   No. 10-cv-04461, 2011 U.S. Dist. LEXIS 154784 (C.D. Cal.
   Oct. 21, 2011) ..................................................................................15, 16

*SeeComm Network Servs. Corp. v. COLT Telcomms.*,
   No. 04-cv-1283, 2004 U.S. Dist. LEXIS 18049 (N.D. Cal. Sept. 3, 2004) .......11

*Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) ............................................................7, 8, 9, 10

*Tanious v. Landstar Sys.*,
   No. 19-cv-1067, 2020 U.S. Dist. LEXIS 105552 (C.D. Cal. June 15, 2020) ....11

*The Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)................................................................................10, 13

*Thomas v. Facebook, Inc.*,
   No. 1:18-cv-00856, 2018 U.S. Dist. LEXIS 138333 (E.D. Cal. Aug. 14,
   2018) ..................................................................................................12, 13

*Walker v. Carnival Cruise Lines*,
   107 F. Supp. 2d 1135 (N.D. Cal. 2000)...............................................................13

*Washington v. Cashforiphones.Com*,
   No. 15-cv-0627, 2016 U.S. Dist. LEXIS 192253 (S.D. Cal.
   June 1, 2016)...................................................................................11, 12, 15, 16

*Weingrad v. Telepathy, Inc.*, No. 05-cv-2024, 2005 U.S. Dist. LEXIS 26952
   (S.D.N.Y. Nov. 7, 2005)......................................................................................22

*Westside Winery, Inc. v. Palm Bay Int'l, Inc.*,
   No. 18-cv-2765, 2018 U.S. Dist. LEXIS 219128 (N.D. Cal. Aug. 3, 2018) .....18

*Yiren Huang v. Futurewei Techs., Inc.*,
   No. 18-cv-00534, 2018 U.S. Dist. LEXIS 235769 (N.D. Cal. Sept. 24, 2018) .17

**STATUTES**

28 U.S.C. § 1404...............................................................................*passim*

I.    **INTRODUCTION**

This case should have been filed in Colorado, not California. Defendants Wata, Inc. ("Wata") and Collectors Universe, Inc. ("Collectors Universe") request that the Court enforce the parties' agreed-upon forum-selection clause and transfer this case to the U.S. District Court for the District of Colorado under 28 U.S.C. § 1404(a).

Plaintiffs are individuals who purchased video game grading and encapsulation services from Wata. They have now brought suit alleging that Wata made false representations to customers when presenting estimated turnaround times for those services. At the appropriate time, Defendants will show why Plaintiffs' claims are without merit and should be dismissed. For now though, this lawsuit suffers from a threshold defect in venue. The problem? Plaintiffs agreed that disputes like this one would be litigated in Colorado.

Before completing their purchase of Wata services, each of the named Plaintiffs agreed to the Wata Services Agreement, which unambiguously memorialized the parties' agreement that (i) "[a]ll claims under, or otherwise with respect to, this Agreement will be brought and maintained in the … courts located in the City and County of Denver, Colorado" and that (ii) "the parties hereby expressly consent to the exclusive venue and jurisdiction of such courts and waive any and all objections to such venue and jurisdiction, including with respect to forum non conveniens." Still, Plaintiffs ignored that agreement and chose to file this putative class action in the teeth of that valid forum-selection clause. The Court can and should remedy this issue by transferring this case to where it belongs—the District of Colorado.

The U.S. Supreme Court has made clear that valid forum-selection clauses should be enforced in "all but the most unusual cases." *Atl. Marine Constr. Co. v. U.S. Dist.*

*Ct.*, 571 U.S. 49, 66 (2013). This is not one of those "most unusual cases." Not even close. The forum-selection clause here is mandatory, broad, and covers all of Plaintiffs' asserted claims—which are each logically and causally connected to the Wata Services Agreement governing the parties' relationship and the services provided under that agreement. And, as detailed below, Plaintiffs have no credible argument that the forum-selection clause is invalid or unenforceable. Nor are there any policy or public-interest considerations that might otherwise preclude enforcing the clause.

Simply put, this transfer motion presents a straightforward application of binding case law to an unambiguous services contract, which requires this case to be litigated in the District of Colorado—not in this Court.

## II.   **BACKGROUND**

This lawsuit concerns transactions for services related to collectible retro video games. Defendant Wata (a Colorado corporation which—until the beginning of this year—maintained the majority of its operations in Denver, Colorado) provides grading and encapsulation services to video game resellers and collectors. (Compl. ¶¶ 14, 22).[1] Essentially, customers ship their video games to Wata; Wata inspects and grades the video game box, cartridge, manual and/or sealing; and then, if Wata determines the game is authentic, Wata encapsulates the game in a clear plastic case and assigns it a grade based on its condition. (*Id.* at ¶ 24). Wata offers different pricing tiers based on "turnaround estimates"—e.g., 150 business days for the "Turbo" tier and 18 business

---

[1] According to the Complaint, in or around July of 2021, Wata was purchased by Defendant Collectors Universe, which has its principal place of business in Santa Ana, California. (*Id.* at ¶ 14). In September 2021, Wata announced it was relocating its services to Santa Ana, and by January 2022, the majority of Wata operations were being conducted out of Santa Ana. (*Id.* at ¶¶ 58, 61). The Complaint otherwise does not contain any allegations specific to Collectors Universe.

days for the "WarpZone" tier. (*Id.* at ¶ 27).

The thrust of Plaintiffs' Complaint is that Wata made false representations, or failed to disclose the truth, when presenting estimated turnaround times for its services when entering into transactions with customers. Based on those allegations, Plaintiffs assert claims for violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"); intentional misrepresentation; and nondisclosure. Plaintiffs have also brought a RICO claim. The RICO claim includes implausible and irrelevant allegations that Wata manipulated the market for retro video games. But, like Plaintiffs' other claims, the RICO claim ultimately rests on allegations that Defendants made "false representations of turnaround times" and that consumers suffered injuries through "the payment of fee[s] for grading services which were not timely provided." (*Id.* at ¶¶ 134, 137).

Plaintiffs' transactions for Wata's encapsulation and grading services are governed by the Wata Services Agreement. (*See* Declaration of Deniz Kahn ("Kahn Decl.") at Exhibit A).[2] Customers order grading and encapsulation services online through Wata's website. And, before a customer is able to check out and submit payment for Wata's services, the customer must affirmatively click a box indicating "I agree with <u>Wata Services Agreement</u>," with the "Wata Services Agreement" language serving as a direct hyperlink to the agreement itself. (Kahn Decl. at ¶¶ 6-8). A customer cannot proceed to checkout and order services without clicking the box confirming the customer's assent to the Wata Services Agreement. (*See id.* at ¶ 7). This same process was in place at the time when each of the named Plaintiffs submitted their orders for

---

[2] Mr. Kahn's Declaration is attached to the Declaration of Kathy J. Huang filed herewith.

Wata's services (*id.* at ¶ 11), so each of the Plaintiffs in this case necessarily clicked the box manifesting their assent to the Services Agreement before the completion of their orders and the submission of their games to Wata.

Most relevant here, Wata's Services Agreement contains a choice-of-law and forum-selection clause under the bolded heading "**8.2 Governing Law**":

> This Agreement will be governed by the laws of the State of Colorado as applied to agreements made, entered into and performed entirely in Colorado by Colorado residents. All claims under, or otherwise with respect to, this Agreement will be brought and maintained in the State and Federal courts located in the City and County of Denver, Colorado, and the parties hereby expressly consent to the exclusive venue and jurisdiction of such courts and waive any and all objections to such venue and jurisdiction, including with respect to forum non conveniens.

(*id.* at ¶ 9 & Ex. A). Section 8.2 of the Wata Services Agreement has remained unchanged since before 2020, when the first named Plaintiff (Jacob Knight) alleges to have placed an order with Wata. (*See id.* at ¶ 10).

On May 10, 2022, notwithstanding the forum-selection clause, Plaintiffs filed this putative class action in this Court.[3] Counsel met and conferred on June 1, 2022, but to date, Plaintiffs have refused to agree to transfer the case to the District of Colorado.

## III. <u>LEGAL STANDARD</u>

A forum-selection clause may be enforced through a motion to transfer under 28 U.S.C. § 1404(a). *Atl. Marine*, 571 U.S. at 59. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

---

[3] Plaintiffs amended their complaint on June 9, 2022 to add a request for damages in connection with their CLRA claim.

"In the typical case not involving a forum selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties [e.g., the ease of access to sources of proof] and various public-interest considerations." *Id.* at 62, 62 n.6. Under this typical analysis, the district court would also give some weight to the plaintiffs' choice of forum. *Atl. Marine*, 571 U.S. at 62 n.6. The district court would then "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 62-63 (quoting 28 U.S.C. § 1404(a)). But this case is different.

That's because there was an already an agreement on the forum for disputes. Indeed, "the calculus changes . . . when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). "The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" *Id.* (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). "For that reason, and because the overarching consideration under § 1404(a) is whether transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given **controlling weight** in all but the most exceptional cases.'" *Id.* (emphasis added).

As the Supreme Court explained in *Atlantic Marine*, the presence of a valid forum selection clause thus requires district courts to adjust the usual § 1404(a) analysis in three ways. First, a plaintiff's venue privilege for choice of forum "merits no weight," and the "the ***plaintiff bears the burden*** of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63 (emphasis added). Second, a court "should not consider arguments about the parties' private interests" and must instead

"deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. That means a district court may consider only arguments about public-interest factors, which "will rarely defeat a transfer motion." *Id.* Third, if venue is transferred, the original venue's choice-of-law rules will not apply (which is a factor that, in certain cases, may affect public-interest considerations). *Id.* In adopting this modified § 1404(a) analysis, the Supreme Court in *Atlantic Marine* made clear that "courts should not unnecessarily disrupt the parties' settled expectations" where they have contracted to litigate disputes in a particular forum, and that "[i]n all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66.

Finally, "[w]hen ruling on motions to transfer based on § 1404(a), the Court may consider facts outside of the pleadings and need not accept the pleadings as true." *S Squared Sustainable Surfaces, LLC v. Upofloor Ams., Inc.*, No. 16-cv-3354, 2016 U.S. Dist. LEXIS 185795, at *4-5 (C.D. Cal. Aug. 1, 2016).

## IV.   **ARGUMENT**

In the end, this case is not one of the "the most unusual cases" or "the most exceptional cases" cases contemplated by the Supreme Court's discussion in *Atlantic Marine.* That means the forum-selection clause in the Wata Services Agreement "should be given controlling weight," this Court should "hold[] the parties to their bargain," and the case should be transferred to District of Colorado. 571 U.S. at 63, 66.

A detailed discussion of each of the individual factors in the analysis highlights why that is the right outcome here. In deciding a motion to transfer pursuant to a forum-selection clause under § 1404(a), a court should determine: (1) whether the forum-selection clause is mandatory or permissive and whether the plaintiffs' claims fall within the scope of the clause; (2) whether the clause is valid and enforceable; and (3)

whether any § 1404(a) public-interest factors outweigh the otherwise controlling weight of the clause. *Quality Office Furnishing v. Allsteel, Inc.*, No. 17-cv-0724-DOC, 2017 U.S. Dist. LEXIS 236497, at *7, *15-16 (C.D. Cal. June 23, 2017) (Carter, J.).[4] Here, that analysis requires transfer of this action to the District of Colorado, including all claims against Wata and Collectors Universe.

## A.   Plaintiffs' Claims Fall Within the Scope of the Mandatory Forum-Selection Clause

In the Ninth Circuit, courts "apply federal contract law to interpret the scope of a forum-selection clause." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). "In interpreting a forum-selection clause under federal law," courts rely upon "general principles for interpreting contracts." *Id.* (citation omitted). A straightforward application of those principles here demonstrates that the forum-selection clause is mandatory and covers all of Plaintiffs' claims.

As an initial matter, the forum-selection clause is mandatory because venue is specified with mandatory language ("[a]ll claims . . . will be brought and maintained in the State and Federal Courts located in the City and County of Denver, Colorado . . .") and the clause contains language that clearly designates the chosen forum as the exclusive one (". . . and the parties hereby expressly consent to the exclusive venue and jurisdiction of such courts."). *See Cooley v. Target Corp.*, No. 20-cv-00876-DOC, 2020 U.S. Dist. LEXIS 246876, at *7 (C.D. Cal. Oct. 12, 2020) (Carter, J.); *JPMorgan Chase Bank, N.A. v. Coverall N. Am., Inc.*, No. 1:08-cv-0805, 2009 U.S. Dist. LEXIS 47794,

---

[4] At the outset, there can be no dispute as to the applicability of § 1404(a) because the District of Colorado is a "district or division to which all parties have consented"—Plaintiffs and Wata through the forum-selection clause and Collectors Universe through this litigation. *See generally* Section IV.D.2.

at *7 (N.D. Ohio June 1, 2009) (language "will be brought" is mandatory). That answers the first question: the clause here was mandatory, not permissive.

From there, it is also clear that the scope of the forum-selection clause covers all of Plaintiffs' claims because it expressly applies to "[a]ll claims under, or otherwise with respect to" the Wata Services Agreement. The Ninth Circuit has held that forum-selection clauses covering disputes "relating to" a particular agreement apply to any disputes that reference the agreement or have some "logical or causal connection" to the agreement—even if the dispute does not necessarily "grow out of the contract" or "require interpretation of the contract." *Sun*, 901 F.3d at 1086.[5] The Ninth Circuit has also found that the phrase "relating to" is synonymous with the phrase "with respect to." *Id.* (citing *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 & n.2 (1st Cir. 2011)); *Fireman's Fund Ins. Co. v. Plant Insulation Co.*, 734 F.3d 900, 910 (9th Cir. 2013) (also citing *Huffington*); *Cal. Tow Truck Ass'n v. City & Cnty. of S.F.*, 797 F.3d 733, 746 (9th Cir. 2015). So the same broad interpretation ascribed to a forum-selection clause covering all claims "relating to" a particular agreement applies to forum-selection clauses, like this one, covering all claims "with respect to" an agreement.

Applying that framework here, the Wata Services Agreement's forum-selection clause covers all of the claims in this case. Because the clause covers "all claims . . . **with respect to**" the agreement, it applies to any claim that has some logical or causal connection to the parties' agreement. All of Plaintiffs' claims are connected to the Wata Services Agreement. If there were any doubt, Plaintiffs' own allegations

---

[5] It is well-settled that forum selection clauses can apply to tort claims as well as contractual causes of action. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).

erase it. Plaintiffs specifically pleaded that their standing to bring all claims arises from visiting Wata's website, reviewing representations, and ordering video game grading services on the same website just prior to entering into the transaction governed by the Services Agreement. (*See* Compl. ¶ 71.) And Plaintiffs' UCL, FAL, intentional misrepresentation, nondisclosure, and CLRA claims are all premised on Defendants' alleged failure to disclose, or misrepresentation of, a purportedly material fact (turnaround time for encapsulation and grading services) at the time Plaintiffs entered into transactions for those services. (*See id.* at ¶¶ 146, 152, 157, 167-69, 180). Plaintiffs' transactions were governed by the Wata Services Agreement, which they necessarily agreed to in order to complete their transactions. (*See* Kahn Decl. at ¶ 7.) So their claims "could not have been made without the agreement," and they must be logically and causally connected to that Agreement. *Sun*, 901 F.3d at 1086-87.

Plaintiffs' RICO claim is no exception. It is also based on Defendants allegedly committing racketeering activity "by accepting payment for video game grading services which were based on false representations of turnaround times," and Plaintiffs' purported RICO injury is "the payment of fee[s] for grading services which were not timely provided." (Compl. ¶¶ 134, 137). These claims too could not have been made in the absence of the transaction for encapsulation and grading services governed by the Wata Services Agreement. *Sun*, 901 F.3d at 1086-87; *see also Or.-Idaho Utils., Inc. v. Skitter Cable TV, Inc.*, No. 1:16-cv-00228, 2017 U.S. Dist. LEXIS 128287, at *16 (D. Idaho Aug. 9, 2017) (finding RICO claims alleging that the defendants "operated an enterprise in order to perpetrate the fraud upon the Plaintiffs" would not have existed "but for" the agreement, which was the "common denominator that brought the parties

together").[6] Thus, the mandatory forum-selection clause encompasses all of the claims in this suit.

### B.   The Forum-Selection Clause Is Valid and Enforceable

Under federal law, which governs the validity and enforcement of forum selection clauses in diversity cases, "[f]orum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow*, 858 F.2d 509, 513, 514 (9th Cir. 1988) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). The Supreme Court and the Ninth Circuit have identified three specific grounds for invalidating or refusing to enforce a forum-selection clause: (1) "if the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003) (citing *Bremen*, 407 U.S. at 12-13, 15, 18); *see also Sun*, 901 F.3d at 1088. Plaintiffs bear a "heavy burden" in proving any of these grounds are "clearly" met. *Murphy*, 362 F.3d at 1140. None of the three grounds are present here, so Plaintiffs cannot meet their "heavy burden" to preclude the enforcement of the parties' agreed-

---

[6] Further, even if the Court were to find that the RICO claims were not covered by the forum-selection clause like Plaintiffs' other claims, those RICO claims are inextricably intertwined insofar as they spring from the same fundamental facts, require litigation of the same essential questions, and would threaten to create inconsistent rulings if litigated piecemeal in multiple forums. That considerations alone would be enough to justify transferring the entire action. *See Indep. Fin. Grp., LLC v. Quest Tr. Co.*, No. 3:21-cv-00537, 2021 U.S. Dist. LEXIS 116518, at *15 (N.D. Cal. June 22, 2021).

upon forum-selection clause.

1. **Plaintiffs cannot meet their heavy burden to show that the inclusion of the forum-selection clause was a product of fraud or overreach**

As to the first ground, "[f]or a party to escape a forum selection clause on the grounds of fraud, it must show that '*the inclusion of that clause in the contract* was the product of fraud or coercion.'" *Brown v. Artec Glob. Media, Inc.*, No. 16-cv-2651, 2017 U.S. Dist. LEXIS 233746, at *12 (S.D. Cal. July 5, 2017) (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998)). But "simply alleging that one was duped into signing the contract is not enough." *Richards*, 135 F.3d at 1297; *see also Petersen v. Boeing Co.*, 715 F.3d 276, 282-83 (9th Cir. 2013) (reversing dismissal based on forum-selection clause where clause was included in the contract based on fraud or overreach—i.e., the clause was inserted into a new version of the agreement after plaintiff had already signed).[7] Put another way, even alleging that the terms of an agreement containing a forum-selection clause "are the product of fraud" and that the plaintiff "was fraudulently induced into entering" into the agreement is insufficient to invalidate the clause. *Cashforiphones.Com*, 2016 U.S. Dist. LEXIS 192253, at *13-14. This same rule applies to overreach: the party resisting the chosen forum must show that the inclusion of the forum-selection clause in particular was the product of "undue influence" or "overweening bargaining power." *Tanious v. Landstar Sys.*, No. 19-cv-

---

[7] As multiple courts in this Circuit have explained, invalidating a forum-selection clause because the contract as a whole is invalid would require the district court to first assess the merits of the case, which is "clearly backwards." *Future Foam v. Fxi, Inc.*, No. 16-cv-312, 2016 U.S. Dist. LEXIS 204836, at *10 (C.D. Cal. Apr. 5, 2016); *see also, e.g., Washington v. Cashforiphones.Com*, No. 15-cv-0627, 2016 U.S. Dist. LEXIS 192253, at *13 (S.D. Cal. June 1, 2016); *SeeComm Network Servs. Corp. v. COLT Telcomms.*, No. 04-cv-1283, 2004 U.S. Dist. LEXIS 18049, at *12 (N.D. Cal. Sept. 3, 2004).

1067, 2020 U.S. Dist. LEXIS 105552, at *9 (C.D. Cal. June 15, 2020). Plaintiffs could never make the requisite showing here.

That's because each of them entered into a routine online transaction in which they clicked a box at checkout to affirmatively indicate their agreement with the hyperlinked Wata Services Agreement containing the forum-selection clause. Plaintiffs do not—and cannot—allege that the forum-selection clause was included in the contract as the result of any fraudulent or coercive act. And, even if they were to try to claim they were fraudulently induced to enter into the Wata Services Agreement as a whole (which would be a frivolous argument), that still would not be enough to avoid enforcement of the forum-selection clause. *See, e.g.*, *Cashforiphones.Com*, 2016 U.S. Dist. LEXIS 192253, at *14.

Nor can Plaintiffs invalidate the forum-selection clause on the ground that the Wata Services Agreement is a form contract or "click-wrap" (or click-to-accept) agreement. In reality, "[c]ourts routinely uphold forum selection clauses in form contracts between consumers and businesses," including so-called "click-wrap" agreements. *Thomas v. Facebook, Inc.*, No. 1:18-cv-00856, 2018 U.S. Dist. LEXIS 138333, at *10 (E.D. Cal. Aug. 14, 2018) (collecting cases); *see also Moretti v. Hertz Corp.*, No. 13-cv-02972, 2014 U.S. Dist. LEXIS 50660, at *10-11 (N.D. Cal. Apr. 11, 2014) (enforcing forum-selection clause in form contract where plaintiff was given opportunity to review terms of services in the form of a hyperlink and had to affirmatively check "acceptance box" to check-out); *Lentini v. Kelly Servs.*, No. 17-cv-03911, 2017 U.S. Dist. LEXIS 162744, at *4-5 (N.D. Cal. Oct. 2, 2017) (enforcing forum-selection clause contained in package of application documents to which plaintiff consented by the click of a mouse, and finding the clause was "thus reasonably

communicated"). Any argument to the contrary in this case would fail as a matter of law. The principle that "forum selection clauses in form contracts are presumptively enforceable . . . has been consistently and routinely applied to forum selection clauses contained *in click through user agreements on websites*." *Thomas*, 2018 U.S. Dist. LEXIS 138333, at *10 (emphasis added).

As such, Plaintiffs cannot meet their "heavy burden" to show that the forum-selection clause is invalid due to fraud or overreach.

> **2.    Plaintiffs cannot meet their heavy burden to show that they would effectively be deprived of their day in court if the forum-selection clause was enforced**

As to the second ground, the party resisting enforcement of the forum-selection clause must show that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Bremen*, 407 U.S. at 18. "Courts have routinely rejected the notion that the expense or inconvenience of prosecuting an action in the designated forum rises to the level of depriving one of one's day in court, and therefore have only found grave difficulty and inconvenience in cases in which physical or other such difficulties, *in addition* to financial hardship, are present." *Quality Office*, 2017 U.S. Dist. LEXIS 236497, at *12-13. For example, in *Walker v. Carnival Cruise Lines*, the court found that enforcement of a forum-selection clause would deprive the immobile, financially-limited quadriplegic plaintiffs of their day in court because of "the degree, combination and cumulative effect of the severe physical *and* economic disabilities [which they] faced." 107 F. Supp. 2d 1135, 1142 (N.D. Cal. 2000). Plaintiffs allege no such issue with the named Plaintiffs, two of which live closer to Colorado than they do California.

In any case, as this Court has explained, it is doubtful that this even remains a

viable ground for challenging a forum-selection clause post-*Atlantic Marine*. *Quality Office*, 2017 U.S. Dist. LEXIS 236497, at *14. "Some courts have found . . . that a plaintiff's financial ability to bear the costs and inconvenience of litigation in another state are factors that the Supreme Court in . . . *Atlantic Marine* deemed private interests that the Court may not consider." *Id.* (cleaned up). *Atlantic Marine* itself counseled that:

> [A] court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

571 U.S. at 64. The upshot? Even if Plaintiffs could point to any factors beyond mere expense or inconvenience that may amount to a deprivation of their day in court, the Court should reject that argument in light of *Atlantic Marine*.

### 3.    Plaintiffs cannot meet their heavy burden to show that enforcement of the forum-selection clause would contravene a strong public policy of this forum

As to the third ground, the Ninth Circuit has "developed a straightforward test to decide whether a forum-selection clause contravenes public policy." *Lee v. Fisher*, No. 21-15923, 2022 U.S. App. LEXIS 12941, at *7 (9th Cir. May 13, 2022). A court should first look to the forum in which the suit is brought and then determine whether the plaintiff has identified a "statute or judicial decision" in that forum that "clearly states" strong public policy rendering the clause unenforceable. *Id.*

There is no statute or judicial decision like that here. With nowhere else to turn, Plaintiffs may attempt to argue that the forum-selection clause contravenes California's public policy of protecting California consumers' non-waivable rights under California's CLRA, relying on *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009). But

that decision is inapposite.[8] In *Doe 1*, the Ninth Circuit refused to enforce a forum selection clause because the forum selected—***Virginia state court***—did not allow for consumer class actions. Under those specific circumstances, the Virginia state court forum-selection clause violated California public policy that strongly favors consumer class actions and would have resulted in a waiver of rights under the CLRA. *Doe 1*, 552 F.3d at 1083-84. But courts in this Circuit have repeatedly rejected public-policy-based arguments relying on *Doe 1* where, as here, the party invoking the forum-selection clause seeks transfer to another ***federal court*** in a different jurisdiction.

For good reason: where the forum selection clause permits actions to be brought in federal court, plaintiffs remain free to pursue their claims on a class basis in accordance with Federal Rule of Civil Procedure 23, and thus have not waived any rights under the CLRA. *See Run Them Sweet, LLC v. CPA Glob., Ltd.*, No. 16-cv-03662, 2016 U.S. Dist. LEXIS 147803, at *7-8 (N.D. Cal. Oct. 25, 2016) (finding transfer to ***federal court seated in Virginia*** did not violate California public policy because plaintiff could bring claims on class-wide basis under Rule 23 and transfer would not confine plaintiff to a court "procedurally incapable of hearing" the type of claim plaintiff sought to bring); *Cashforiphones.Com*, 2016 U.S. Dist. LEXIS 192253, at *18; *Sawyer v. Bill Me Later, Inc.*, No. 10-cv-04461, 2011 U.S. Dist. LEXIS 154784, at *20 (C.D. Cal. Oct. 21, 2011); *Gamayo v. Match.com, LLC*, No. 11-cv-00762, 2011 U.S. Dist. LEXIS 95914, at *19 (N.D. Cal. Aug. 23, 2011).

Further, the *Doe 1* court found the forum-selection clause unenforceable because

---

[8] Parties in Plaintiffs' position also sometimes attempt to rely on *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1 (Cal. Ct. App. 2001). But since *Doe 1* was based on the Ninth Circuit's application of *America Online,* the reasoning underlying these judicial decisions is the same and they are both inapplicable for the same reasons.

it effected a waiver of statutory remedies provided by the CLRA when coupled with the choice-of-law provision in the contract at issue. But "when the designated transfer venue involves a U.S. District Court, courts analyze the enforceability of forum selections clauses separately from the choice-of-law provision." *Plumleigh v. Metro. Fine Arts & Antiques*, No. 14-cv-1721, 2015 U.S. Dist. LEXIS 201118, at *16 (C.D. Cal. Jan. 21, 2015); *see also Cashforiphones.Com*, 2016 U.S. Dist. LEXIS 192253, at *18-19 (collecting cases); *Sawyer*, 2011 U.S. Dist. LEXIS 154784, at *20 (same). "This is because, despite the existence of a choice-of-law provision, the transferee court can apply California law if it determines that is appropriate." *Plumleigh*, 2015 U.S. Dist. LEXIS 201118, at *16. "After transfer, Plaintiff[s] will be able to argue that California law applies, and the District of [Colorado] can make the appropriate determination." *Sawyer*, 2011 U.S. Dist. LEXIS 154784, at *23-24 (recognizing that the transferee U.S. District Court "is just as capable as this Court of applying the appropriate legal standards to this case, and the Court [should] not assume otherwise").

Finally, because it is up to the transferee court to determine the appropriate choice of law to apply (including whether California law could apply notwithstanding the choice-of-law provision), this Court need not—and should not—address whether Colorado consumer protection laws otherwise afford the same protections as California's consumer protection laws in assessing whether transfer would contravene a public policy of California. *Sawyer*, 2011 U.S. Dist. LEXIS 154784, at *23-24; *see also E. Bay Women's Health, Inc. v. gloStream, Inc.*, No. 14-cv-00712, 2014 U.S. Dist. LEXIS 55846, at *8 (N.D. Cal. Apr. 21, 2014) (finding argument that Michigan law might provide less protection than California's UCL unavailing "because it requires speculation as to the potential outcome of the litigation on the merits in the transferee

forum and to consider whether that outcome would conflict with a strong public policy of the transferor forum at the outset of the action" (internal quotation marks and citations omitted)).

At bottom, *Doe 1* is not a judicial decision that clearly states a strong public policy rendering the forum-selection clause at issue unenforceable. Nor are there other statutes or decisions that state a public policy that render the clause unenforceable.

## C.   The § 1404(a) Public-Interest Factors Do Not Otherwise Militate Against Transfer

"In the face of a valid and enforceable forum selection clause, Plaintiffs can only avoid transfer pursuant to the forum selection clause by demonstrating that the public interest under § 1404(a) makes transfer inappropriate." *Yiren Huang v. Futurewei Techs., Inc.*, No. 18-cv-00534, 2018 U.S. Dist. LEXIS 235769, at *23 (N.D. Cal. Sept. 24, 2018); *see also Perez v. CRST Int'l*, No. 17-cv-1081, 2018 U.S. Dist. LEXIS 27901, at *15 (C.D. Cal. Feb. 14, 2018). As the Supreme Court identified in *Atlantic Marine*, "[p]ublic-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6. But "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64. This is not such an "unusual case"—none of the public-interest factors identified in *Atlantic Marine* weigh against transferring this action to the District of Colorado.

Transferring the case to the District of Colorado will not create court congestion. To the contrary, there are over ***8,000 more*** civil actions pending in the Central District

of California than in the District of Colorado. *See* Table C-1 U.S. U.S. District Courts — Civil Statistical Tables for the Federal Judiciary, *available at* https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2021/12/31; *see Montalvo Assocs., LLC v. Amtax Holdings 279, LLC*, No. 5:21-cv-00797, 2021 U.S. Dist. LEXIS 140026, at *10 (N.D. Cal. July 27, 2021) (relying on similar statistics in ruling in favor of transferring from the Northern District of California to the parties' selected forum of the Southern District of California).

And when it comes to assessing any local interest in this controversy, courts have found this factor inapplicable (or entitled to little weight) in contract disputes arising from obligations that are national in scope or where the claims at issue are based on a national advertising and promotional campaign. *See Westside Winery, Inc. v. Palm Bay Int'l, Inc.*, No. 18-cv-2765, 2018 U.S. Dist. LEXIS 219128, at *9-10 (N.D. Cal. Aug. 3, 2018); *Allegiance Healthcare Corp. v. London Int'l Grp.*, No. 97-cv-4619, 1998 U.S. Dist. LEXIS 8953, at *12 (N.D. Cal. June 16, 1998). That is the case here. (*See, e.g.*, Compl. ¶ 118 ("Plaintiffs all engaged with Wata based on the company's standardized business model that had customers from around the United States purchasing services through Wata's website.") & ¶¶ 26-27 (focusing allegations on "turnaround estimates" posted for the public on "Wata's website")). In any event, Colorado's localized interest in resolving the dispute is far greater than California's. To give a few examples:

- Plaintiffs entered into an agreement with a ***Colorado*** corporation, whose principal place of business was in ***Colorado*** at the time of the agreements.[9]

_____

[9] Plaintiffs allege Wata is a Colorado corporation that maintained its principal place of business in Denver, Colorado "until about September of 2021." (Compl. ¶ 14). But the Complaint later alleges that the majority of Wata's operations were not relocated to Santa Ana, California until "the beginning of 2022" (*id.* at ¶ 15), and Wata merely

18

- At least two of the three named Plaintiffs sent their subject video games to *Colorado* to be graded, so the events giving rise to the suit occurred in *Colorado*. (*See* Compl. ¶ 74 (Knight); Compl. ¶ 78 (Cribbs)).[10]

- Plaintiffs' agreements specify that *Colorado* law governs and that any claims must be maintained in the state and federal courts of *Colorado*. (*See* Kahn Decl. at Ex. A).

California's interest in this case, meanwhile, is limited to the allegations that: (1) one of the three named Plaintiffs in this putative nationwide suit is a California resident; (2) Wata conducted some business in California (as it did throughout the United States); and (3) Wata (the party with whom Plaintiffs transacted) was acquired by Collectors Universe, and Wata's operations were eventually moved to California by 2022. But courts have found that, even where a local resident suffers injury and thus the forum state has "some interest" in the controversy, that is "not enough to defeat enforcing the forum selection clause." *Earthmade Prods., LLC v. Botanicals Internacional S.A. de C.V.*, No. 8:20-cv-02445, 2022 U.S. Dist. LEXIS 26437, at *14-15 (C.D. Cal. Feb. 1, 2022); *see also Miave v. Pitech Plus*, No. 21-cv-00327, 2021 U.S. Dist. LEXIS 109444, at *11 (C.D. Cal. May 5, 2021).[11] And any interest arising from Wata having its principal place of business in California arose only recently, as a result

---

"announced" it was relocating services to Santa Ana, California in September 2021 (*id.* at ¶¶ 9, 15). Thus, based on the Complaint, a "substantial predominance" of corporate activity—the relevant test for determining a corporation's principal place of business— did not take place in California until 2022. *See Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (setting forth relevant test for principal place of business). All of the Plaintiffs in this case entered into transactions with Wata prior to 2022. (*See* Compl. ¶ 73 (Knight; 6/8/20); ¶ 78 (Cribbs; 4/7/21); ¶ 97 (Dohse; 12/4/21)).

[10] Plaintiff Dohse does not indicate where he shipped his video games. (*See* Compl. ¶ 98 ("Dohse promptly shipped the games to Wata.")).

[11] If injuries to local residents were sufficient to defeat forum-selection clauses, then these clauses would be routinely disregarded by courts. The opposite is true, as "forum-selection clauses . . . control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

of Wata's relocation *after* Plaintiffs entered into transactions with Wata. *See Future Foam*, 2016 U.S. Dist. LEXIS 204836, at *29-30 (holding plaintiffs failed to demonstrate "extraordinary circumstances" required to defeat a motion to transfer, notwithstanding California's strong interest in protecting its residents against non-compete agreements, and stating "[i]t is notable that the basis for California's local interest arises only from [the employee's] recent move to California following the termination of his employment with [defendant]"). Simply put, Colorado has a greater local interest—the Plaintiffs entered into agreements with a Colorado company, sent their video games to Colorado to be graded, and agreed to resolve disputes in Colorado courts and under Colorado law.

Lastly, the factor related to the interest in having the trial in a court that is at home with the law once again favors Colorado—or is, at the very least, neutral. The choice-of-law clause in the Service Agreement provides that Colorado law will govern in this case. If this provision is enforceable, a Colorado federal district court is more at home with Colorado law than a California federal district court—so the third factor (familiarity with law in a diversity case) weighs in favor of transfer. *Quality Office*, 2017 U.S. Dist. LEXIS 236497, at *18. Regardless, this case does not implicate obscure facets of California law that the District of Colorado is incapable of applying and, if necessary, Plaintiffs will "have the opportunity to dispute the enforceability of the choice-of-law provision in the transferee court." *Id.* So there is no issue here.

In sum, the § 1404(a) public-interest factors identified in Atlantic Marine "do not make transfer inappropriate here," and Plaintiffs cannot "sufficiently ma[k]e out that this is an unusual case in which a valid forum selection clause should not control." *Id.*

**D.** **Transfer Is Appropriate as to Claims Against Both Defendants—Including Collectors Universe**

Although Collectors Universe is not a party to the Wata Services Agreement, it can still rely on the forum-selection clause under well-established Ninth Circuit law and because all parties consented to litigate this action in the District of Colorado.

**1.** **Any alleged conduct of Wata's parent company, Collectors Universe, is so closely related to the contractual relationship that the forum-selection clause applies to both Defendants**

The Ninth Circuit has held that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). The *Manetti-Farrow* court further explained that a forum selection clause applies to non-signatories to the contract where "the alleged conduct of the non-parties is . . . closely related to the contractual relationship[.]" *Id.*; *see also Future Foam*, 2016 U.S. Dist. LEXIS 204836, at \*22. The point is this: A non-party to a contract may be bound by a forum selection clause where it is "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (citing *Manetti-Farrow*, 858 F.2d at 514 n.5). To hold otherwise would allow a plaintiff to defeat a forum-selection clause in virtually every case by simply joining non-signatory corporate officers or corporate affiliates to a lawsuit. *Novak v. Tucows, Inc.*, No. 06-cv-1909, 2007 U.S. Dist. LEXIS 21269, at \*46-47 (E.D.N.Y. Mar. 26, 2007) (collecting cases rejecting this type of gamesmanship); *Palinode, LLC v. Plaza Servs., LLC*, No. 3:20-cv-00807, 2021 U.S. Dist. LEXIS 186044, at \*15 (M.D. Tenn. Sept. 28, 2021) (same).

Here, the alleged conduct of Collectors Universe (Wata's parent company) is

closely related to the same dispute with Wata, the relationship between Plaintiffs and Wata, and the transaction for the sale of Wata's encapsulation and grading services, which is governed by the Wata Services Agreement (and its forum-selection clause). The truth is there are virtually no allegations of what Collectors Universe (as opposed to Wata) may have done wrong or said wrong. Still, the allegations that have been included underscore that the claims against Collectors Universe are "closely related" to the same dispute with Wata such that it is "foreseeable" that Collectors Universe could be bound by and rely on the forum-selection clause. Plaintiffs interchangeably and indiscriminately allege that "Defendants"—Wata and Collectors Universe collectively—failed to disclose or made false representations concerning the true "turnaround times" for those services, a purportedly material factor in Plaintiffs deciding to purchase services. (*See* Compl. ¶¶ 134, 137, 146, 152, 157, 167-69, 180; *see also id.* at ¶ 134). Setting aside questions about the sufficiency of those allegations, this suggests Plaintiffs may believe that Wata and Collectors Universe somehow engaged in the same conduct. If nothing else, given the complete absence of any alleged misconduct that Collectors Universe committed separate and apart from Wata, the claims against Collectors Universe could hardly be more "closely related" to the claims against Wata. *See Weingrad v. Telepathy, Inc.*, No. 05-cv-2024, 2005 U.S. Dist. LEXIS 26952, at *15-16 (S.D.N.Y. Nov. 7, 2005) ("A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct."). Collectors Universe can therefore also rely on the forum-selection clause.

### 2.     In any event, all parties have consented to transfer

Even setting aside the applicability of the forum-selection clause to Collectors

Universe as a non-signatory, transfer is appropriate here because all parties have consented to transfer. Section 1404(a) authorizes transfer to "any district or division to which all parties have consented." 28 U.S.C. § 1404. But "[t]here is no requirement in the statute that the consent be written or executed contemporaneously. Nor is there a requirement that all parties be bound by the forum-selection clause in order to consent to a particular venue." *Or.-Idaho Utils., Inc. v. Skitter Cable TV, Inc.*, No. 1:16-cv-00228, 2017 U.S. Dist. LEXIS 128287, at *17 (D. Idaho Aug. 9, 2017); *id.* at *22 (explaining that parties may "agree to a venue in a contract predating the litigation or during the litigation"). Here, Plaintiffs and Wata specifically consented to venue in the District of Colorado in the Wata Services Agreement. And, for its part, Collectors Universe "consented to the change in venue as reflected by [its] filings in this case"—i.e., by joining this motion to transfer. *Id.* at *17. That is enough to satisfy the requirements for transfer under § 1404(a).

## V.   **CONCLUSION**

For these reasons, the Court should grant Defendants' motion and transfer this case to the U.S. District Court for the District of Colorado.


DATED: June 10, 2022            */s/ Kathy J. Huang*
                                KATHY J. HUANG
                                *Attorney for Defendants Wata, Inc. and*
                                *Collectors Universe, Inc.*

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on June 10, 2022, I electronically filed the **DEFENDANTS**

3 **WATA, INC.'S AND COLLECTORS UNIVERSE, INC.'S MEMORANDUM IN**

4 **SUPPORT OF MOTION TO TRANSFER VENUE** with the Clerk of the court for

5 the United States District Court, Central District of California by using the Court's

6 CM/ECF system.

7        Participants in the case who are registered CM/ECF users will be served by the

8 Court's CM/ECF system.

9        I declare under penalty of perjury under the laws of the United States that the

10 forgoing is true and correct.

11        Executed on the 10th day of June, 2022 at Los Angeles, California

12

13                /s/ *Kathy J. Huang*

14                Kathy J. Huang

15

16

17

18

19

20

21

22

23

24

25

26

27

28