Janeen Carlberg (CA SBN 189197)
*jcarlberg@lawfirmoc.com*
Lizeth Perales (CA SBN 325498)
*info@oceralaw.com*
Law Offices of Janeen Carlberg
1912 N. Broadway, Suite 106
Santa Ana, CA 92706
Tel: (714) 665-1900

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB KNIGHT, JACK CRIBBS, and JASON DOHSE, individually and on behalf all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WATA, INC., and COLLECTORS., UNIVERSE, INC, <br><br> Defendants. | Case No.: 8:22-cv-00967-DOC-(KESx) <br><br> Assigned to Hon. David O. Carter <br><br> Action Filed: May 10, 2022 <br><br> **PLAINTIFFS OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE** <br><br> [Filed concurrently with Declaration of Janeen Carlberg] <br><br> **Hearing on Motion:** <br> Date:     July 25, 2022 <br> Time:     8:30 a.m. <br> Dept.:     10A |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . 5

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   SUMMARY OF THE ISSUES AND CLAIMS . . . . . . . . . . . . . . . . 5

    B.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.   EXPLANATION OF DEFENDANT'S SERVICES . . . . . . . 7

        2.   WEBSITE PAGE FLOW SUMMARY . . . . . . . . . . . . . . . . 8

    C.   WATA, INC. AND CU ARE PROPER DEFENDANTS . . . . . . . . . 9

II.   THE COLORADO CHOICE-OF-LAW ISSUE AND THAT
STATE'S  PROHIBITION AGAINST CONSUMER CLASS
ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.   THERE IS NO VALID CONTRACT BETWEEN WATA
AND ITS CUSTOMERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.   THE TERMS OF THE WATA SERVICES AGREEMENT
DO NOT EXTEND TO COLLECTORS UNIVERSE . . . . . . . . . . 14

    B.   THE TERMS OF THE WATA SERVICES AGREEMENT
EXTEND ONLY TO GRADING SERVICES . . . . . . . . . . . . . . . 15

    C.   CONSUMERS DID NOT RECEIVE PROPER NOTICE OF
THE TERMS WHICH ESSENTIALLY CONTAINS
A CONSUMER CLASS ACTION WAIVER . . . . . . . . . . . . . . . . 16

    D.   THERE WAS NO MUTUAL ASSENT AS PRESCRIBED . . . . . . 17

IV.   ANY "AGREEMENT" IS UNENFORCEABLE . . . . . . . . . . . . . . . . . . . 18

    A.   ENFORCING THE TERMS WOULD VIOLATE
CALIFORNIA PUBLIC POLICY . . . . . . . . . . . . . . . . . . . . . . . . . 18

    B.   THE TERMS ARE UNCONSCIONABLE . . . . . . . . . . . . . . . . . . 21

V.   ANY FORUM SELECTION PROVISION IS PERMISSIVE AND
SHOULD NOT BE ENFORCED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1

**TABLE OF AUTHORITIES**

2  ***STATUTES***                                                            ***Page***

3  Cal. Bus. & Prof. §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4  Cal. Bus. & Prof. §17500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5  Cal. Civ. Code §1770 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6  Cal. Corp. Code §2203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 24

7  California Labor Code § 925 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

8  Colorado Revised Statutes § 6-1-101, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,13

9  18 U.S.C. § 1962(c)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10  28 U.S. § 1404(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

11

12  ***CASES:***                                                             ***Page***

13  *Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661

14       (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15  *Armendariz v. Foundation Health Psychcare Services, Inc.*,

16       24 Cal.4th  83 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

17  *Atlantic Marine Construction Co. v. United States District Court for the*

18  *Western District of Texas*, 571 U.S. 49, 62 n.5, 134 S.Ct. 568 (2013) . . . . . . 12, 13

19  *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348 . . . . . 17

20  *Berman v. Freedom Financial Network*, 30 F.4th 849 (9th Cir. 2022)  . . . 16, 17, 19

21  *Davis v. M.L.G. Group*, 712 P.2d 985, 991 (Colo. 1986) . . . . . . . . . . . . . . . . . . . 22

22  *DePuy Synthes Sales, Inc. v. Howmedica Osteonics*,

23       28 F.4th 956 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

24  *Doe 1 v.1 AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . 20, 22

25  *Glob. Power Supply, LLC v. Acoustical Sheetmetal Inc.*,

26       No. CV 18-3719-R, 2018 WL 3414056, at *2 (C.D. Cal. July 9, 2018). . . 14

27  *Graham v. Scissor-Tail*, 28 Cal.3d 807, 817 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28  *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

1  (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2  *Intershop Communications AG v. Superior Court* (2002)

3  104 Cal.App.4th 191 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

4  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) . . . . . . . 20, 21

5  *Lee v. Intelius Inc.*, 737 F.3d 1254 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . 17

6  *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972). . . . . . . . . . . 12, 18

7  *Mannetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988) . . . . . 14

8  *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212

9  (D. Colo. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,13

10 *Moretti v. Hertz Corp.*, 2014 WL 1410432, at *2

11 (N.D. Cal. Apr. 11, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

12 *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1174 (9th Cir. 2014) . . . . . . . . . 8

13 *Pacific Corporate Group Holdings, LLC v. Keck*,

14 232 Cal.App.4th 294(2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15 *Pelleport Investors v. Budco Quality Theaters*, 741 F.2d 273, 279

16 (9th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17 *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). . . . . . . . . . . . . 14

18 *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444 (2021) . . . . . . . . . . . . . . . . . . . 16

19 *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) . . . . 17

20 *Trendsettah USA v. Swisher Int'l Inc.*, 2015 WL 12697653, at *2

21 (C.D. Cal. Feb. 3, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

22 *Univ. Hills Beauty Acad. Inc. v. Mountain States Tel. Co.*,

23 554 P.2d 723 (Colo. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

24 *Verdugo v. Alliantgroup, L.P.*, 237 Cal.App.4th 141, 147 (2015) . . . . . . . . . . . 21

25 *Whipple Indus., Inc. v. Opcon AB*, No. CV-F-05-0902 REC SEMS,

26 2005 WL 2175871, at *1 n.2 (E.D. Cal. Sept. 7, 2005) . . . . . . . . . . . . . . . 14

27 *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088-91

28 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I.   INTRODUCTION

## A.   SUMMARY OF THE ISSUES AND CLAIMS

This case involves racketeering, false advertising and fraud claims against video game grading companies. Defendants are Wata, Inc. ("Wata"), a company which no longer exists, and Collectors Universe ("CU"), a California resident that purchased and operates Wata. The Complaint asserts individual and class claims as follows: 1) RICO (18 U.S.C. § 1962(c)); 2) Unfair Competition Law (Cal. Bus. & Prof. §17200) ("UCL"); 3) False Advertising (Cal. Bus. & Prof. §17500) ("UCL"); 4) Intentional Misrepresentation; 5) Nondisclosure; and 6) Consumers Legal Remedies Act (Cal. Civ. Code §1770) ("CLRA").

Wata was a Colorado company operating out of Colorado until July of 2021 when the company was sold to Collectors Universe, Inc., a company with its principal place of business in Santa Ana. At issue with this motion is a particularly insidious "Wata Service Agreement" which appeared, and still appears, on the www.watagames.com website.

In issue is a lengthy "clickwrap" document that addresses only the grading services offered by the company. Buried deep within the document are a "choice-of-law" and a forum selection provision in favor of Colorado. With this motion to transfer, Wata and CU attempt to give effect to these  provisions.

Plaintiffs maintain that the terms of the Wata Services Agreement in invalid and unenforceable for the following reasons: 1) the terms do not apply to CU; 2) the terms do not apply to this dispute; 3) there was not proper notice of the terms which contain a consumer class action waiver; 4) there was no mutual assent; 5) enforcing the terms would violate California public policy; 6) the terms are unconscionable; and 7) the terms are permissive.

First, the Wata Services Agreement, by its own terms, applies only to Wata. CU, the current operator of what used to be Wata is not a party to the agreement.

Because this is a multi-party litigation the choice-of-law or forum selection provisions are precluded.

Second, the Wata Services Agreement has a limited scope and does not apply to the claims in this case. The "Wata Service Agreement," again by its own terms, applies only to Wata's grading services. This case does not involve any allegations of Wata negligently or incompetently grading games. This is a claim about false advertising, fraud and deceptive market manipulation.

Third, there was no proper notice to Wata customers of the Wata Services Agreement. Colorado law does not allow for consumer class actions. The Colorado Consumer Protection Act (CCPA), codified at Colorado Revised Statutes § 6-1-101, et seq., is Colorado's equivalent to California's UCL and CLRA and has been held not to allow class actions. *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218-19 (D. Colo. 2012). The impact of Defendant's choice-of-law provision essentially operates as a consumer class action waiver. That point was not disclosed to customers and it is not apparent from the agreement that such an impact would be apparent. Indeed, **the moving papers do not even disclose the point to this court**.

Fourth, there was no mutual assent. Wata's website calls for a particular manner of accepting or declining the Wata Service Agreement, by clicking either an "Accept" or "Decline" button supposedly locate at the bottom of the document. However, no such buttons were provided. Worse still, customers attempting review the Wata Service Agreement could not actually read the terms and simply agree because is was no way to navigate back to the "I agree" box that appears on another page. As such, there is not an enforceable contract.

Fifth, the terms are facially invalid in that they violate clear California public policy. Wata, Inc. was a company that did extensive business in California. CU is a company headquartered in Santa Ana, California. Yet, both companies seek to impose Colorado law on all consumers across the country, including California residents. Because consumer class actions of this nature are not permitted in

Colorado, if enforced, the terms would essentially allow a California company operating primarily in California to completely avoid all California consumer protection laws and subvert consumer class actions remedies.

Sixth, the "Wata Service Agreement" is unenforceable because it is unconscionable. The Wata Service Agreement is, by its own terms, a contract of adhesion. All of the terms benefit Defendants. The forum selection and choice-of-law provisions are particularly egregious in that it essentially includes a consumer class action waiver and requires litigation in a distant, inconvenient forum. Other than surreptitiously disposing of consumer remedies, the contract is also vague in that it could be interpreted to apply only to residents and transactions occurring in Colorado.

Consumers are already at a huge disadvantage in situations involving "clickwrap" agreements like this one. If the courts try to offer protection to consumers by enacting consumer protection laws, businesses simply respond by drafting up "terms of use" documents like this. If the law installs procedures securing access to justice, businesses then simply try to draft their way out through choice of law and forum selection provisions. If the law finds such clauses unconscionable and voids them, business again resort to making incremental changes to their documents to try to make them legally tolerable. Defendants and their wonky website and subversive waivers should be given no quarter.

## B. STATEMENT OF FACTS

### 1. EXPLANATION OF DEFENDANT'S SERVICES

Defendant provides video game grading services as described in paragraph 1 of the Wata Service Agreement. Carlberg Dec., ¶14, Ex. 11. Customers engage Defendants services through its website: www.watagames.com. Customers navigate the website to purchase grading and "encapsulation" services for collectible video games. After placing a website order and paying, customers send their games to the company, have them graded and then sent back. Because customers are required to

go to the watagames.com website and follow a series of steps to purchase Defendants services, analysis of the Wata website and the Wata Service Agreement that contains the terms in issue are necessary. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1174 (9th Cir. 2014) (notice "depends on the design and content of the website and the agreement's webpage.").

## 2.     WEBSITE PAGE FLOW SUMMARY

Images of each step of the website are included as Exhibits to the Carlberg Declaration submitted with this opposition. Exhibits 1 through 10 illustrate each page of the website in order. The Wata Service Agreement is Exhibit 11.

**STEP 1**: The Wata home page is the landing site. Carlberg Dec., ¶4, Ex. 1.

**STEP 2:** From the home page at the watagames website, the customer initiates an order by selecting the "Submit a Game" tab from the upper right portion of the page. Carlberg Dec., ¶5, Ex. 2.

**STEP 3**:  The next page is entitled "Select Game" and has a bolded statement that says "Tell us what you've got."  Carlberg Dec., ¶6, Ex. 3. There are two boxes: One is marked "Platform" and the other is marked "Game Title." Customers must enter game information to carry on from this point. The exhibits attached hereto use the example of the video game "Gunbird 2" for the "Sega Dreamcast" system for illustrative purposes Once the game is properly designated, the customer clicks the "THIS IS MY GAME" tab at the bottom right of the page and this progresses the submission to the next page.

**STEP 4**: The next page is entitled "Game Details" and asks the customer to select the value of the game being submitted.  Carlberg Dec., ¶7, Ex. 4.

**STEP 5**: The next page is entitled Options+Add-ons.  Carlberg Dec., ¶8, Ex. 5. From this page a customer may select options including the type of display case desired, the "Service Level" desired and any additional services (such a cleaning services and photographs). Once a customer completes the page, the customer clicks the tab at the bottom right of the screen marked "Add to Queue" to carry on.

**STEP 6**: The next page says "Success" in large, bold font and notes "game successfully added to the queue below!" Carlberg Dec., ¶9, Ex. 6. The customer then has the option to add more game or go to the shopping cart/checkout.  If there are no other games, checkout is the next step.

**STEP 7**: The checkout page appears next. Carlberg Dec., ¶10, Ex. 7. This is the page where insurance charges and shipping charges are added. A tab marked "Proceed" appears and by clicking the tab the

customer is taken to the next page.

**STEP 8**: The next requests the customers shipping address. Carlberg Dec., ¶11, Ex. 8. Customers enter the information in the field boxes. For purposes of the example exhibits, a fictional name was used along with Plaintiffs' counsel's business address.  At the bottom right of the page is another "Proceed" button.

**STEP 9:** The next screen is noted as being an "Order Summary." Carlberg Dec., ¶12, Ex. 9. Below the order summary, there is a box that must be checked that states "I agree with <span style="color:red">Wata Services Agreement</span>." The red letters "Wata Services Agreement" provides a link to a document entitled "Wata Services Agreement." However, the "I agree" box can be checked without traveling to the Wata Services Agreement at all. In fact, the "I agree" box can only be checked if the customer does not travel to the Wata Services Agreement. If a customer links to the Wata Services Agreement, a new tab opens and the customer cannot navigate from the terms back to the order. Also, the documents says there are "Accept" or "Decline" buttons at the bottom of the page, but no such buttons exist. After clicking the "I agree" box and clicking the "Proceed" button, take the customer to a payment screen.

**STEP 10:** The final step is submitting payment for the grading and encapsulation services. Carlberg Dec., ¶13, Ex. 10.

**WATA SERVICES AGREEMENT:** The Wata Services Agreement is attached hereto as Exhibit 11. Carlberg Dec., ¶14. A review of the actual terms presents even more problems. For the sake of respecting page limitations, the terms will not be reproduced here.  Relevant language will be cited in the argument where appropriate.

## C.    WATA, INC. AND CU ARE PROPER DEFENDANTS

For purposes of this opposition, it is also important to identify the actual operating status of Wata and CU in order to make it clear that California has the primary interest in hearing this dispute under California law.

From May 10, 2019 until July of 2021, which is part of the proposed class period [5/10/19 through present], Wata operated as a Colorado corporation with its headquarters in Denver, Colorado. However, the company did substantial business in California during that time. One of the plaintiffs resides in California. Carlberg Dec., ¶15, Ex. 12-"Knight Dec." Mr. Knight placed his order for grading services with Wata in June 3, 2020 when the company operated out of Colorado. However, he did not receive his game back until March 3, 2022, after the company moved to California and his items were shipped back from California. *Id*.

9

During the company's residence in Colorado, Wata conducted business across the U.S. California is the most populous state with an estimated 12% of the population. US Census, https://data.census.gov/cedsci/profile?g=0400000US06. It is logical to presume that Wata's business history will reflect California as being the company's most substantial source of business. In its business model, Wata routinely received and sent video games to California consumers, establishing sustained contacts within the state. See Carlberg Dec., ¶15, Ex. 12–Knight Decl.

On or about July 14, 2021, a press release indicated that the company had been sold to CU. Carlberg Dec., ¶17, Ex. 13 ("Press Release 1"). CU is a company that conducts multiple divisions under one actual business entity in California. For example, CU operates a sports card grading division (PSA) and a coin grading division (PCGS). See https://www.collectors.com/about-us

On September 23, 2021, a press release indicated the company "will move from its Denver offices into PSA's headquarters in California, but will keep its name and branding." Carlberg Dec., ¶18, Ex. 14 ("Press Release 2"). On November 11, 2021, Wata sent out an announcement stating the company was relocating to Southern California. Carlberg Dec., ¶19, Ex. 15 ("Wata Announcement 1"). On December 17, 2021, Wata sent another announcement stating the "moving van" was "in transit." Carlberg Dec., ¶20, Ex. 16 ("Wata Announcement 2"). As such, part of the class period, from July of 2021 through the present, involve claims against Wata and CU operating out of California, thus making California the preferred forum for this dispute.

Thereafter, the address on the Wata website was changed to reflect the Santa Ana location. Carlberg Dec., ¶21, 28 Ex. 17, 22 ("Website Page" "Cal. Sec. of State"). On March 29, 2022, Wata published a Twitter post that stated the company was keeping operations open in Colorado through April 30, 2022. Carlberg Dec., ¶22, Ex. 18 ("Wata Twitter Post"). Since then the Colorado facility appears to have closed completely as certified mail to that address is returned without signature.

1   Carlberg, Dec., ¶23.

2       Also, according to Wata, Inc.'s CEO Deniz Khan's public LinkedIn page, he

3   currently resides in Costa Mesa. Carlberg Dec., ¶24, Ex. 19 ("LinkedIn"). Current

4   job postings for Wata appear on the CU website, identify CU as the employer, and

5   treat Wata as a division. Carlberg Dec., ¶25, Ex. 20 ("Job Posting"). The listing

6   states that CU employees more than 1,000 employees in Santa Ana. *Id*. The listing

7   identifies the states where CU operates and Colorado is not listed. *Id*.

8       Most significantly, according to the California Secretary of State's website,

9   Wata, Inc. has never registered as a foreign corporation qualified to do business in

10  California. Carlberg Dec., ¶27, Ex. 21 ("Cal. Sec. of State Search"). Wata was

11  required to register as a foreign corporation since it did substantial business in the

12  state and then moved here. Corporate governance laws exist, at least in part, to avoid

13  confusion of the very kind that CU and Wata are creating. As a result of the failure

14  to qualify to be business, Wata has consented to the jurisdiction of California in a

15  civil action arising in the state. Corp. Code § 2203.

16  **II.    THE COLORADO CHOICE-OF-LAW ISSUE AND THAT STATE'S**

17  **        PROHIBITION AGAINST CONSUMER CLASS ACTIONS**

18      In this case, there is one federal law claim brought under RICO. The rest of

19  the claims are California state law claims, including three (3) claims under

20  California's UCL and CLRA for consumer protection actions involving false

21  advertising. Federal jurisdiction results from the RICO claim, but there are also state

22  law claims where diversity jurisdiction exists and CAFA jurisdiction. This is a mixed

23  action of federal and California state law.

24      There is also a choice-of-law question in this case. The Wata Services

25  Agreement calls for a Colorado forum and the application of Colorado law. Both

26  Defendants are current residents of California and do business here. Multiple claims

27  are brought under California consumer protection laws and the forum selection

28  clause is wound up with a choice-of-law clause.

Defendant contends that the enforceability of a forum-selection clause should be resolved under federal law. Indeed, that may be true when the claims are exclusively federal. Some older Ninth Circuit opinions interpreting forum selection clauses have applied federal law without discussing whether state or federal law applies. See, e.g., *Pelleport Investors v. Budco Quality Theaters*, 741 F.2d 273, 279 (9th Cir.1984).

However, In *DePuy Synthes Sales, Inc. v. Howmedica Osteonics*, 28 F.4th 956, 962-964 (9th Cir. 2022) ("*DePuy*"), the Ninth Circuit, guided by *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 92 S.Ct. 1907 (1972) ("*Breman*") and *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 62 n.5, 134 S.Ct. 568 (2013) ("*Atlantic Marine*"), held that when issues of state law are in issue, state law governs. The *DePuy* decision acknowledges the complicated nature of the issue, but still went on to hold that where fundamentally important state law claims are in issue, state law governs. (*DePuy*, 28 F.4th at 964.)

California laws must be considered. Colorado law is far less protective when it comes to the class claims under the UCL and CLRA. Colorado actually prohibits consumer class actions and does not allow class remedies. The Colorado Consumer Protection Act (CCPA), codified at Colorado Revised Statutes § 6-1-101, et seq., is Colorado's equivalent to California's Unfair Competition Law (UCL) and California Legal Remedies Act (CLRA). In what has been regarded as a disaster for consumers, Colorado courts have disallowed class actions under Colorado's Consumer Protection Act. *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218-19 (D. Colo. 2012) (concluding that § 6-1-113(2) "defines a defendant's liability under the CCPA in a private action. It limits such liability to specified remedies, and expressly states that such remedies are not applicable in class actions. By logical extension, the CCPA creates no statutory liability for a defendant in a private class action.").

If Defendants convince this court to apply the forum selection provision, then

1  it will immediately follow that Defendants will ask the Colorado district to apply the
2  Colorado choice-of-law provision. Defendants have already indicated it intends to
3  file a Motion to Dismiss. Carlberg Dec., ¶29, Ex. 23.  The application of Colorado
4  law would derail the class claims. Plaintiffs request that the court consider the impact
5  of the Colorado forum selection and choice-of-law clauses in this motion and find
6  that both provisions are inapplicable and/or unenforceable.

7  **III.    THERE IS NO VALID CONTRACT BETWEEN WATA AND ITS**
8  **CUSTOMERS**

9        Before courts can pass judgment on the validity of the forum selection or
10  choice-of-law clause, it must first be determined if there was an actual agreement
11  between the parties. If there was no agreement, there is no clause to consider.

12        In *Atlantic Marine*, the Supreme Court expressly noted an analysis of a forum
13  selection provision, "presupposes" a contractually valid clause. *Atlantic Marine*, 571
14  U.S. at 62 n.5. The approach of first determining whether a valid forum selection
15  provision exists has been consistently followed the this district. See *Moretti v. Hertz*
16  *Corp*., 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (noting that before
17  engaging in analysis of forum selection clause, a "[c]ourt must first determine
18  whether a valid forum-selection clause exists within the subject contract");
19  *Trendsettah USA v. Swisher Int'l Inc*., 2015 WL 12697653, at *2 (C.D. Cal. Feb. 3,
20  2015) ("Before the court may consider the impact of any forum selection clause . .
21  . it must first determine whether a contract exists and, if so, whether it contains the
22  forum selection clause at issue.").

23        State law will determine whether a valid contract exists. *Glob. Power Supply,*
24  *LLC v. Acoustical Sheetmetal Inc.*, No. CV 18-3719-R, 2018 WL 3414056, at *2
25  (C.D. Cal. July 9, 2018) ("Although federal law governs the interpretation and
26  enforcement of forum selection clauses, state law governs contract formation and the
27  interpretation of an agreement's terms."); *Whipple Indus., Inc. v. Opcon AB*, No.
28  CV-F-05-0902 REC SEMS, 2005 WL 2175871, at *1 n.2 (E.D. Cal. Sept. 7, 2005)

("[T]he issue of the existence of [a] forum selection clause" is "decided according to state contract law.").

### A.   THE TERMS OF THE WATA SERVICES AGREEMENT DO NOT EXTEND TO COLLECTORS UNIVERSE

A forum selection clause can only be found to be enforceable if it actually covers the claims and parties involved in the dispute. See *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). The Wata Service Agreement does not cover one of the parties or any of the claims.

The introductory paragraph of the document in issue specifically states that it applies only to Wata, Inc. only, not to CU. There is no language in the document that would extend the terms to another company, such as references to the document extending to parents, subsidiaries, successors or affiliates. Defendant appears to admit that CU is not a party to the agreement, but argues that it should benefit from the document anyway. A contract cannot be enforced by a non-signatory.  See *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245. The court can choose to not to enforce a forum selection provision where there are multiple parties. Only when the conduct is closely related can the court enforce a forum selection clause for non-signatories. *Mannetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988).

Here, CU had no connection whatsoever to any of the transactions or claims until it purchased Wata in July of 2021. Certainly, the company cannot gain retroactive benefits that consumers could not have foreseen. Since operating Wata, CU has refused to change the Wata website to reflect the proper legal entity and has failed to change the Wata Service Agreement to make itself a party to the agreement despite fully having the opportunity to do so.  CU wants to be dismissed from the case and completely divorce itself from Wata, Inc. at one moment (Carlberg Dec., Ex. 23) and then, in the next, wants the benefits of contracts from before it was involved with Wata.

**B.   THE TERMS OF THE WATA SERVICES AGREEMENT EXTEND ONLY TO GRADING SERVICES**

The terms are beyond the scope of these claims. The introductory paragraph of the "Wata *Services* Agreement" states that Wata "agrees to provide *Services* **(as defined below)** to you on the terms and conditions set forth in this Wata Services Agreement so long as you accept this Agreement by selecting the "Accept" button at the bottom of this page." Decl of Carlberg, ¶14, Ex. 11, emphasis added.

The definition of "Services (as defined [by the document])" are specific and do not include the claims in this case. "Services" are delineated in Paragraph 1, including four (4) subparagraphs. Those paragraphs address Wata's agreement to provide the following services: 1) receive games and refuse grading services (Ex. 11, ¶1.1); 2) to insure the video games in its possession (Ex. 11, ¶1.2); 3) grading (Ex. 11, ¶1.3); and 4) photographing the game (Ex. 11, ¶1.4).  That is the total scope of the Wata Services Agreement according to the document itself.

This is not a contract action or a claim for Wata failing to provide proper grading services. It is understandable that Wata would be concerned lawsuits relating to grading practices. The company likely contemplated receiving inauthentic items, customer complaints about grading and claims for damaged items. But what is not contemplated or included in the agreement are claims are unrelated tort and consumer claims for false advertising and racketeering.

Also, Wata is the party that drafted the document. The company could have chosen to write it more broadly. Wata could have easily written this agreement to include "any or all actions brought against Wata," or "any claims resulting from the transaction with Wata," or to "any and all claims arising between the parties." Instead, the company merely defined its "services" and the scope of the agreement to apply to receiving, refusing service, grading, insuring, and photographing items. It is not alleged anywhere in the Complaint that the defendant breached a contract or incorrectly graded items. Rather, the claims stand completely outside of the

context of any alleged contractual relationship.

## C.     CONSUMERS DID NOT RECEIVE PROPER NOTICE OF THE TERMS WHICH ESSENTIALLY CONTAINS A CONSUMER CLASS ACTION WAIVER

The document in issue failed to provide proper notice to consumers of a class action waiver. Navigation of the website ensured that consumers could not review the terms and then navigate back to the order to complete the transaction.

In *Berman v. Freedom Financial Network*, 30 F.4th 849 (9th Cir. 2022) ("*Berman*"), the Ninth Circuit stated requirements that a business seeking to enforce terms in an online document must demonstrate that the consumer has actual knowledge of the terms and must provide "reasonably conspicuous notice" of the terms. *Id.* at 856. Notice is not reasonably conspicuous when there is no disclosure that agreeing to terms would essentially be a class action waiver. The *Berman* court provided guidance about the formation of online contracts and provided examples, including a California state appellate court decision called *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444 (2021) that concluded that a company had failed to provide "sufficiently conspicuous" notice of class waivers.

Here, only buried deep in the document towards the end do the choice-of-law and forum selection provisions appear under the heading  "Miscellaneous." The consequences of agreement are never made clear, not even to this court by the moving parties and certainly not to an average consumer. In *Lee v. Intelius Inc.*, 737 F.3d 1254 (9th Cir. 2013), the court determined a consumer had not entered into a contract where the language and placement of prompts were confusing.

Defendant also failed to provide reasonably conspicuous notice of a class action waiver. It also made it impossible for consumers to access the terms and navigate back to the "I agree" box and instead opening an entirely separate non-navigable tab. The website is designed in such a manner as to prohibit customers from being able to follow the hyperlink to the terms and then either "accept" or

16

1    "decline" as the document directs. Trying to navigate back to the "I accept" screen

2    from the new tab is impossible, ensuring that many consumers did not actually read

3    the terms. As such, the court should find there is no contract.

4        **D.**    **THERE WAS NO MUTUAL ASSENT AS PRESCRIBED**

5        There was no assent to the terms. The Wata Services Agreement specifically

6    calls for a particular manner of acceptance. Yet, the manner of acceptance was never

7    made available to consumers. Parties must manifest their mutual assent to the terms

8    of the agreement. *Berman*, 30 F.4th at 856; *Specht v. Netscape Communications*

9    *Corp.*, 306 F.3d 17, 29 (2d Cir. 2002)(California law).

10        There is no contract formed when an offer provides for a particular manner of

11    acceptance or declination that cannot be met. It is basic contract law that if an offeror

12    prescribes the only way in which his offer may be accepted, an acceptance in any

13    other way does not form a contract. "[W]hen the parties to a proposed contract have

14    themselves fixed the manner in which their assent is to be manifested, an assent

15    thereto, in any other or different mode, will not be presumed." *Banner*

16    *Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 359; see also

17    *Pacific Corporate Group Holdings, LLC v. Keck*, 232 Cal.App.4th 294, 312 (2014)

18    (contrasting a condition of acceptance with a suggested manner of acceptance).

19        The introductory paragraph defines the manner of how to accept or decline the

20    agreement:

21            Wata, Inc. (dba Wata Games), a Colorado corporation ("Wata"), agrees to provide the Services (as defined below) to you on the terms and conditions set forth in this Wata Services Agreement (this "Agreement") **so long as you accept this Agreement by selecting the "Accept" button at the bottom of this page. Please read this Agreement carefully before selecting the "Accept" or "Decline" button. By selecting the "Accept" button, you acknowledge that (1) you have read and understand all of the terms and conditions of this Agreement; (2) you agree to be bound by all of the terms and conditions of this Agreement; and (3) if you are acting on behalf of an entity, you have full authority to bind your entity to all of the terms and conditions of this Agreement and by clicking "Accept"**

**you do so bind your entity to this agreement. If you are not willing to be bound by all of the terms and conditions of this Agreement, select the 'Decline' button at the bottom of this page** and Wata will not provide the Services to you and your credit card will not be charged. (Carlberg Dec Ex.11 (emphasis added).

There is was no "accept" or "decline" button at the bottom of the page. Rather, the only indicator of acceptance appears on the order summary page that presents the link to the terms. There was no way to accept or decline the terms on the terms page itself, as was repeatedly and specifically delineated as the prescribed manner of acceptance by the company. Because Defendants failed to provide a proper, digestible and understandable website, no contact was formed.

## IV.   ANY "AGREEMENT" IS UNENFORCEABLE

### A.   ENFORCING THE TERMS WOULD VIOLATE CALIFORNIA PUBLIC POLICY

The forum selection and choice-of-law provisions are violate public policy and are unreasonable and unjust. In *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972) ("*Bremen*") that a "forum [selection] clause should control absent a strong showing that it should be set aside."  The Ninth Circuit followed *Bremen*, finding that "forum-selection clauses are presumptively valid and should be enforced unless 'enforcement would be unreasonable and unjust, or . . .  the clause [is] invalid for such reasons as fraud or overreaching.'" *DePuy Synthes Sales, Inc. v. Howmedica Osteonics*, 28 F.4th 956, 962. "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15.

The forum selection provision and choice-of-law provision selecting Colorado should be invalidated as being fundamentally unfair and in contravention of public policy. Absent the Wata Service Agreement, California law would clearly be an appropriate forum given that both Wata (to the extent it still exists) and CU are here

along with all of the companies executives, information and employees. As such, the court should determine whether the enforcement of the covenant would conflict with a "fundamental policy" of California law that is materially greater than Colorado's interest in the dispute.

Given that Wata and CU are currently operating in California, conducting business with California consumers and actively trying to subvert California class action consumer protection laws and remedies, analysis indicates California is the more appropriate forum. If the case is moved to Colorado, where none of the defendants operate, there will be no class remedy available. This is likely why CU, a company that has never operated in Colorado, wants the case moved there. Deferring to Colorado would substantially diminish the rights of California residents and all consumers which clearly runs counter to well-settled public policy. *Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 200 (*Intershop*) ("a forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state").

In *DePuy Synthes Sales v. Howmedica Osteonics*, the Ninth Circuit held that a U.S. district court in California properly invalidated a foreign choice-of-law and forum selection provision under California Labor Code § 925, and denied a motion to transfer the case to a different venue. Though forum selection clauses are generally enforceable, the 9th Circuit reasoned that deference must be given to state law in determining the validity of a forum selection clause before considering whether the clause is enforceable under 28 U.S. § 1404(a).

In *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009), the Ninth Circuit held that forum selection and choice-of-law provisions will not keep California consumers out of California courts or to prevent them from applying California law to their claims, even against out-of-state companies. The court's per curiam opinion interpreted a forum selection clause to limit the parties to suit in Virginia state court and found that—when combined with the agreement's choice-of-law clause applying

Virginia law—was unenforceable for two reasons: (1) requiring California consumers to litigate in Virginia state court would violate California public policy favoring consumer class actions, because consumer class actions are not available in Virginia state courts; and (2) California plaintiffs would be limited to establishing violations of the Virginia Consumer Protection Act, rather than California's Consumer Legal Remedies Act ("CLRA"), which allows for greater relief and includes an antiwaiver provision. *Id.* at 1084. This is the situation here.

In *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000), the Ninth Circuit considered the effect of a California statute that prohibited forum-selection clauses choosing "a non-California forum for claims arising under or relating to a franchise located in the state." *Id*. at 498. The court of appeals affirmed the district court's refusal to enforce the parties' forum-selection clause because the plaintiff "chose California as the forum for his lawsuit, and his choice [was] supported by California's strong public policy to provide a protective local forum for local franchisees." *Id*. at 499; see also *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088-91 (9th Cir. 2018) (citing Doe 1 and reaffirming the principle that state policy can be determinative); *Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 663 (9th Cir. 2016) ("Enforcement is unreasonable and unjust if 'enforcement would contravene a strong public policy' of California." (citation omitted)); *Jones*, 211 F.3d, at 498 (a strong state public policy alone can invalidate a forum selection clause).

Forum selection clauses that potentially impinge on "unwaivable rights created by California statutes" are presumed to be unenforceable. *Verdugo v. Alliantgroup, L.P.*, 237 Cal.App.4th 141, 147 (2015). This so-called "agreement" seeks to divest California courts of regulating fair business practices conducted in its own state.

## B.    THE TERMS ARE UNCONSCIONABLE

If the Court believes that a valid contract was formed, the forum selection provision and choice-of-law provisions should be deemed unenforceable because

20

they are unconscionable. This is a situation where the text of the document announces it is a contract of adhesion in the introduction paragraph stating that if customers decline Wata will not provide services. This "adhesion contract" presents an exceptional situation that justifies finding the document unenforceable.

Whether the court considers California or Colorado law, the result is the same. The contract is voidable because it is fundamentally unfair. In California and Colorado, a contract may be revoked if it is unconscionable. *Graham v. Scissor-Tail*, 28 Cal.3d 807, 817; *Univ. Hills Beauty Acad. Inc. v. Mountain States Tel. Co.*, 554 P.2d 723, 726 (Colo. 1976).

In California an unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 113 (2000). The second principle of equity applicable to all contracts generally is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is oppressive or unconscionable.  *Id*. Colorado has a similar standard to California in determining unconscionability. *Davis v. M.L.G. Group,* 712 P.2d 985, 991 (Colo. 1986).

This is a one-sided, unilateral contract of adhesion that only benefits Wata. The agreement contains numerous terms that are aimed to secure the rights and interests of only the business, not the consumers, such as an oppressive limitations on company obligations in providing services (Section 1), conference of rights to take and uses photos of consumers' property (Section 1.4), the right to charge consumers for purchased services and mandating insurance purchases through the company (Section 2), disclaimers of warranties (Section 3 & 4), intellectual property reservations and demands that consumers execute documents to protect the companies interests (Section 5), limitations of liability (Section 6), survival terms that only apply to terms that favor the company (Section 7) choice-of-law clause (Section 8.2), and of course, an inconvenient forum (Section 8.2).

Additionally, the "agreement" between the parties should be voided due to the vagueness of certain provisions. The "Governing Law" provision in issue at paragraph 8.2 states: "This Agreement will be governed by the law of the State of Colorado as applied to agreements made, entered into and performed entirely in Colorado by Colorado residents." (Ex. 11.) This sentence could easily be interpreted by consumers as making the Wata Service Agreement only applying to transactions conducted entirely within the State of Colorado and between Colorado residents. If the term were clear it would state that it applies "as though" it applied to agreements entered into by Colorado residents.

## V.   ANY FORUM SELECTION PROVISION IS PERMISSIVE AND SHOULD NOT BE ENFORCED

Wata has not been legally operating in California and has not filed its foreign corporation documents. By improperly operating in California, the company has consented to jurisdiction in California. Cal. Corp. Code § 2203. Wata wants to avoid California fees and taxes by declining to register as a foreign corporation, yet wants to be recognized as a legally distinct and separate company.

In *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987), the Ninth Circuit discussed the difference between mandatory and permissive clauses. The Ninth Circuit noted that if parties merely consent to the jurisdiction of a particular court, the forum selection clause is permissive, whereas if the clause provides that a particular court has exclusive jurisdiction, the clause is a mandatory clause and permissive clauses do not require enforcement. *Id*.

## VI.   CONCLUSION

The reality is that businesses have greater power and sophistication than consumers, Surely, consumers, not businesses, are on the side that needs protection. They are less informed, less well-funded, plagued by collection action problems and overall less able to secure compliance with their side of the bargain.  If anything, courts should seek to remedy the asymmetry, not reflect or endorse it. Because of the

unfairness and inherent weaknesses of contract law in the consumer protection area, the proper solution is to ensure that consumers have access to protection consumer laws rather than giving effect to contractual shenanigans imposed by businesses. Consumer protection laws should not be inaccessible or impossible to enforce. For the reasons stated herein, Plaintiffs request the court deny the motion to transfer.

Dated: July 1, 2022                              LAW OFFICES OF JANEEN CARLBERG

                                                 /s/ *Janeen Carlberg*
                                                 JANEEN CARLBERG
                                                 Attorney for Plaintiffs

1

## **CERTIFICATE OF SERVICE**

2        I hereby certified that on July 1, 2022, I electronically filed **PLAINTIFFS'**

3 **OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE** with

4 the Clerk of the Court for the United States District Court, Central District by using

5 the Court's CM/ECF system.

6        Participant in the case who are registered CM/ECF users will be served by the

7 Court's CM/ECF system.

8        I declare under penalty of perjury under the laws of the United States that the

9 forgoing is true and correct.

10        Executed on the 1st day of July, 2022, at Santa Ana, California.

11

12                                                                 /s/ *Janeen Carlberg*
                                                                   Janeen Carlberg

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28